UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                        CRIMINAL NO. 2:21-00261

DARRIN ALONZO MILLER

UNITED STATES TRIAL BRIEF

Now comes the United States of America and offers this trial brief for this Court's review and consideration.

## I.   Case Background

Defendant is charged with a single count of transfer of obscene material to a minor under the age of 16, in violation of 18 U.S.C. § 1470.

On or about June 22, 2020, defendant mailed a letter (attached hereto as Exhibit 1) to ██████████████ (M.M.) from the Parkersburg Correctional Center, where he was imprisoned on a grand larceny conviction. The letter was part of an ongoing series of communications (via both letters and jail call) between defendant and M.M. during which defendant endeavored to convince M.M. to engage in sexual activity with him ████████████████████████ ████ upon his release from prison.

In the letter, defendant described himself, in graphic
detail, having ███████ sex with the 14-year-old girl. After
noting that he understands why there are "so many things" he wants
that "may never have," he tells her that he can "have it on paper."
He then describes how he would have sex with her if he could.
Defendant describes "sliding two fingers deep inside your pussy
and then letting you watch me lick your juice from them both." He
then tells the minor that should would "grab my dick and guide it
into your soaking pussy." Despite writing that she would respond
"no" when he asked if she wanted him to "fuck [her] hard,"
defendant wrote, "Harder and harder I slam my rock hard dick inside
you." He concludes that they would both "cum at the same time."

## II.  Law Regarding Obscenity

A key element to the charged offense (and the only element
that is anticipated to be in dispute at trial) is whether the
letter defendant sent to his 14-year-old sister is "obscene." The
Supreme Court set forth a three-part test to determine if something
is obscene in Miller v. California, 413 U.S. 15, 24 (1973). The
requirements for each of these prongs of the test is set forth
below.

### A. Appealing to the Prurient Interest

The first part of the test asks whether the "average person,
applying contemporary adult community standards, would find the
work, taken as a whole, appeals to the prurient interest." A work

appeals to the prurient interest where it would either stimulate the erotic or disgust and sicken the average adult. <u>United States v. Guglielmi</u>, 819 F.2d 451, 454-55 (4th Cir. 1987). Appealing to the prurient interest does not cover material that provokes "only normal, healthy sexual desires," but rather applies to works that appeal to a "shameful or morbid interest in nudity, sex, or excretion." <u>Id.</u> at 455. The more offensive a material is regarding this shameful or morbid interest the more likely it is to lead to a reaction of revulsion rather than sexual arousal in the average person. <u>Id.</u> It is for this reason that a jury may look to either the stimulation of the erotic or the response of disgust when determining if a work appeals to the prurient interest.

In this case, the United States intends to rely upon both the letter itself ███████████████████████████████████ to prove this prong of the <u>Miller</u> test. The letter itself involves descriptions of sex with a 14-year-old girl that a rational jury could find appeal to the prurient interest in that it could evoke sexual arousal in some or disgust in others. However, the fact that the letter is written to and graphically describes sexual activity between defendant, a then 38-year-old man, and ████████ ███████ ████████ provides even greater support for a finding that the work appeals to the prurient interest. ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

██ This offense carries a penalty of 5 to 15 years in prison, whereas the offense of Third-Degree Sexual Assault (which would cover sex between an adult man and a minor under the age of 16) carries a penalty of only 1 to 5 years in prison. See W.V. Code § 61-8B-5. This substantial difference in penalty reflects the fact that ██████ is viewed as even more offensive and degrading than statutory rape in our state.

For this reason, the fact that ████████████████ is important to prove that the letter appeals to the prurient interest. The United States is not limited in its presentation of relevant evidence simply because it may already have sufficient evidence to meet its burden; as the burden rests with the United States, it must be given the ability present its best evidence to prove each element. As the evidence regarding ██████ ████████████████ is probative for the reasons set forth above and this probative value is not substantially outweighed by any risk of unfair prejudice, the evidence regarding this relationship is admissible.[2]

_____

[1] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

**B. Patently Offensive**

The second part of the test asks whether "the average person, applying contemporary adult community standards, would find that the work depicts or describes sexual conduct in a patently offensive way." Rather than looking to the whole of a work, this test looks at the way in which the sexual conduct is depicted or described. The types of conduct subject to analysis, as set forth in Miller and as relevant to this case, include "representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated." Jenkins v. Georgia, 418 U.S. 153, 160 (1974).

When determining whether a description of sexual conduct is patently offensive under contemporary community standards, the question is whether the average adult in the community would find that the description deviates from what a community accepts as complying with the local standards of decency and morality or is otherwise substantially beyond customary limits of candor. This standard looks as to what is accepted, and not merely tolerated, by a community, for communities may tolerate or put up with many unpleasant things while not actually accepting them as meeting standards of decency. United States v. Pryba, 900 F.2d 748, 759 (4th Cir. 1990); see also United States v. Easley, 927 F.2d 1442, 1446 (8th Cir. 1991) (rejecting the argument that patent offensiveness be measured by what the community will merely tolerate rather than what it will accept).

5

Whether a description of sexual conduct is patently offensive is a question of fact. <u>Miller</u>, 413 U.S. at 30. While a jury's finding as to patent offensiveness is given a great deal of deference, the First Amendment does not allow for unlimited discretion. As noted in <u>Jenkins</u>, a jury's verdict can be overturned where the offensiveness finding is "wholly at odds" with <u>Miller</u>, such as an obscenity conviction based upon a depiction of a woman's bare midriff. <u>Jenkins</u>, 418 U.S. at 161. Unlike a bare midriff, which depicts neither an ultimate sex act, masturbation, nor a lewd exhibition of the genitals, "hard core" depictions of such acts will almost always be reasonably found patently offensive by a rational juror.

A variety of examples in case law illustrate the landscape for what is rationally deemed patently offensive. Numerous courts in recent years have found that a picture of an erect penis (with or without a depiction of masturbation) can be rationally found to be patently offensive as a lewd exhibition of the genitals. <u>See, e.g.</u>, <u>United States v. Salcedo</u>, 924 F.3d 172, 179 (5th Cir. 2019) (exercising its "independent constitutional judgment," the panel found a picture displaying an erect penis was patently offensive and affirmed a conviction under 18 U.S.C. § 1470); <u>United States v. Guthrie</u>, 720 F. App'x 199, 203 (5th Cir. 2018) (unpublished); <u>United States v. Kirkpatrick</u>, 662 F. App'x 237, 240 (5th Cir. 2016) (unpublished); <u>United States v. Rogers</u>, 474 F. App'x 463, 470 (7th

Cir. 2012) (unpublished); <u>United States v. Jenkins</u>, 322 F. App'x 716, 716-17 (11th Cir. 2009) (unpublished).

Courts have also found various written descriptions of sexual conduct to be patently offensive. In 2013, a district court found that a tweet on Twitter was patently offensive and obscene; the tweet read "I hope Coach brown gets fucked in tha ass by 10 black dicks." <u>Rosario v. Clark Cty. Sch. Dist.</u>, 2013 U.S. Dist. LEXIS 93963, at *8 (D. Nev. July 3, 2013). As another court noted when referencing <u>Rosario</u>, it was the use of the words "fucked," "ass," and "10 black dicks" that rendered the tweet patently offensive. <u>Sagehorn v. Indep. Sch. Dist. No. 728</u>, 122 F. Supp. 3d 842, 855 (D. Minn. 2015).

In scenarios quite similar to those present in this case, courts have found that the contents of letters sent by inmates were obscene and not entitled to any First Amendment protection. In a recent case from the Western District of Washington, the court concluded that the use of graphic descriptions of sexual activity and "slang words for sexual organs" supported a conclusion that sexual conduct was described in a patently offensive way. <u>Pedersen v. Schneider</u>, 2021 U.S. Dist. LEXIS 240663, at *7 (W.D. Wash. Dec. 16, 2021). That court relied upon a prior decision in that district from 2016 that found letters, which graphically described the inmate engaging in sexual activities with the letters' intended [adult] recipient, were patently offensive due to both the graphic

7

nature of the descriptions and the use of "street slang and vernacular for sexual organs." Perez v. Warner, 2016 U.S. Dist. LEXIS 65057, at *8 (W.D. Wash. Apr. 27, 2016).

The contents of the letter defendant sent to M.M. can be rationally found by a jury to be patently offensive under current community standards. Like the inmate letters in Pederson and Perez, defendant's letter uses vulgar slang for genitals (including "soaking pussy" and "rock hard dick") and graphically describes various sexual conduct (including licking "juice" from the minor's "pussy" and "slam[ming]" her with his "rock hard dick"). The letter goes far beyond the language in the brief tweet at issue in Rosario with its repeated use of the term "fuck" in addition to the above-noted crude references to sexual organs. And certainly the graphic descriptions in the letter are at least as offensive as the single photograph displaying an erect penis that the Fifth Circuit found to be patently offensive in Salcedo only three years ago.

A rational jury can therefore properly find the letter to be patently offensive under contemporary community standards.

### C. Lack of Serious Literary Value

The final part of the Miller test is whether a reasonable person would find that the work, taken as a whole, lacks serious literary value. There is no question that defendant's letter, sent privately to ███████████████ to convince her to engage in

sexual activity with him, is entirely lacking in serious literary value.

### III. Potential Trial Issues

Given the parties' stipulations, the issue before the jury in this case is very narrow – whether the letter sent by defendant to M.M. is obscene. As such, the United States anticipates that its case-in-chief will be brief with few, if any, legal issues arising.

#### A. Defendant's Motion in Limine

Defendant has filed a pending motion in limine to preclude the United States from introducing additional letters and/or jail calls between defendant and M.M. The United States does not intend to introduce any such exhibits or elicit testimony regarding those any other letters or calls during its case-in-chief. As such, defendant's motion is moot.

#### B. Testimony/Evidence Regarding M.M.

The United States intends to introduce the unredacted original of the letter into evidence. This letter, in unredacted form, contains both M.M.'s full last name and home address. The United States intends to use a redacted copy of the letter for purposes of displaying the letter on the screens during trial in order to avoid the disclosure of the minor's identity to anyone present in the gallery. The United States further intends to submit to the Court a redacted copy of the exhibit to be filed on the

public docket, with the unredacted exhibit being admitted under seal.

Further, the United States requests that the minor be referred to as M.M. by counsel, any witnesses, and the Court during the trial in order to comply with privacy rights under 18 U.S.C. § 3509.

### C. Time for Closing Arguments

The evidentiary portion of the trial will be quite brief as the entire case turns upon a single letter. The pivotal part of the trial will be the parties' arguments to the jury regarding the application of these facts to the relatively complex questions under the Miller obscenity test. Accordingly, despite the brevity of the government's anticipated case-in-chief, the parties believe that at least 20 minutes of time for closing arguments for each side would be appropriate.

### D. First Amendment Nullification

The Miller test exists in order to distinguish speech and expression that is protected by the First Amendment and obscenity, which has no such protection. Accordingly, while arguments can be made by defendant that the letter at issue is not obscene, any argument or insinuation that even obscene speech should be protected by the First Amendment is contrary to law. As such, any such argument or insinuation improperly calls for jury nullification and should be prohibited.

10

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney


/s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
WV Bar No. 12181
300 Virginia Street, East, Rm 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax:  304-347-5104
Email: jennifer.herrald@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "UNITED STATES TRIAL BRIEF" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 11th day of July, 2022, to:


Wesley P. Page
Federal Public Defender
300 Virginia St. E., Rm. 3400
Charleston, WV 25301
wesley_page@fd.org


/s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
WV Bar No. 12181
300 Virginia Street, East, Rm 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax:  304-347-5104
Email: jennifer.herrald@usdoj.gov